Lorenzo **MOLINA–CAMACHO,** Petitioner,

v.

John **ASHCROFT,** Attorney General, Respondent.

No. 02–73536.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 2004.

Filed Dec. 28, 2004.

**938**

Walter Rafael Pineda and Charles E. Nichol (argued), Law Office of Walter Rafael Pineda, San Francisco, CA, for the petitioner.

Aviva Poczter, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, DC, for the respondent.

Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.

HAWKINS, Circuit Judge:

Lorenzo Molina–Camacho ("Molina"), a 40–year–old native and citizen of Mexico, entered this country illegally in 1984. He has a wife and three children, the youngest of whom, Ricardo, is a United States citizen. When the INS initiated removal proceedings against him in 1998, Molina conceded removability, but applied for cancellation of removal.

The Immigration Judge ("IJ") found that Molina qualified under the Immigration and Nationality Act ("INA"), section 240A(b), and granted cancellation. The INS appealed, and one member of the Board of Immigration Appeals ("BIA") reversed and entered an order removing Molina to Mexico.[1] Molina timely petitioned for review.

## FACTS AND PROCEDURAL HISTORY

Born in Michoacan, Mexico, Molina was raised in a one-room house with eight other family members and no running water. Unable to find work or pursue an education, Molina left Mexico at the age of 21, entering the United States in June of 1984. Between 1984 and 1998, Molina returned to Mexico three times to visit family and to marry his wife, Rosa. Each visit was for three weeks or less. Rosa eventually joined him in the United States in 1991 with the couple's two oldest children, Jesus and Rosa, both born in Mexico. Ricardo, the youngest, was the only child born in the United States.

Since entering the United States, Molina has worked consistently, paid taxes, and started his own landscaping business. He is able to pay for his children's education and health insurance. Molina testified that if the family were forced to return to Mexico, it would severely impact his children's educational opportunities, and would deprive Ricardo of health insurance, since he is not a Mexican citizen.

After considering Molina's application for cancellation of removal, finding his testimony and supporting documentary evidence credible, the IJ concluded that Molina was statutorily eligible based on

---

**1.** Molina was given 30 days to voluntarily depart.

"exceptional and extremely unusual hardship" to Ricardo and granted the application. INA § 240A(b)(1)(D); 8 U.S.C. § 1229b(b)(1)(D). The INS appealed to the BIA.

On appeal, the BIA, looking at the same factual record, determined that Molina had not met his statutory burden for cancellation because he had not shown exceptional and extremely unusual hardship "that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *In re Monreal–Aguinaga*, 23 I & N Dec. 56, 65 (BIA 2001). Since Molina had conceded that he was removable, the BIA ordered him removed to Mexico.

## DISCUSSION

We must determine if the holding of *Noriega–Lopez v. Ashcroft*, 335 F.3d 874 (9th Cir.2003), applies to invalidate the BIA's issuance of an order of removal in the first instance after reversing an IJ's grant of discretionary relief from removal. *Noriega–Lopez* involved an IJ determination that the petitioner was not statutorily removable. On appeal to the BIA, the Board reversed and ordered deportation. However, we held that the BIA did not have statutory authority to issue an order of deportation because "the present statute specifies in no uncertain terms that it is IJs who are to issue administrative orders of removal in the first instance. There is no indication in the statute that the BIA may do so." *Id.* at 884. *Noriega–Lopez* reserved "for another day" whether this holding applies to "situations in which an IJ determines that an alien is removable (whether based on a concession or after adjudication) but grants relief from removal, and the BIA then rejects the grant of relief." *Id.* at 884 n. 10.

It is apparent to us that this day has come, and that we are bound to apply the holding of *Noriega–Lopez* to invalidate the removal order. Because we hold that the BIA acted *ultra vires* in issuing an order of deportation in the first instance, we must determine whether this holding divests us of jurisdiction to review the merits of Molina's claim under 8 U.S.C. § 1252.

## I. Jurisdiction

■ Molina's case presents an issue somewhat different from the typical issue presented under IIRIRA's permanent rules—whether our jurisdiction is limited or precluded by various "jurisdiction-stripping" provisions in the revised statute. *See, e.g., Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 598–99 (9th Cir.2002). Here, we focus on whether a case where no final order of removal has been issued falls outside of the "jurisdiction granting" provision of IIRIRA, 8 U.S.C. § 1252.

Section 1252 mandates when and under what circumstances appellate courts have jurisdiction over *final orders of removal*. *See, e.g.,* § 1252(a)(1) (providing that "[j]udicial review of a final order of removal" is governed by 28 U.S.C. § 158); § 1252(b)(1) (deadline for filing petition for review based on date of "final order of removal"); § 1252(b)(3)(A) (service on Attorney General in the district "in which the final order of removal ... was entered"); § 1252(d) (prerequisites for review of a "final order of removal").

Whether issuance of the removal order exceeded the BIA's authority, then, goes directly to whether a final order of removal exists which would provide jurisdiction under § 1252. Certainly we have jurisdiction to determine whether we have jurisdiction. *Lopez–Molina v. Ashcroft*, 368 F.3d 1206, 1208 (9th Cir.2004). We there-

fore proceed to the merits of the *Noriega–Lopez* issue.

## II. BIA Order of Removal

■ *Noriega–Lopez's* holding rests upon at least three grounds that apply here: (1) the plain language of 8 U.S.C. § 1101(a)(47); (2) the structure of the current immigration department and process of judicial review, *see* 8 U.S.C. § 1252(b)(3)(A); and (3) the consistency of this interpretation with the appellate authority of the BIA, *see* 8 C.F.R. § 1003.1(d)(1). The same statutory language and structure applicable in *Noriega–Lopez* apply with equal force to cases like Molina's, in which an IJ finds an applicant removable, but grants discretionary relief from removal which is then appealed by the INS and reversed by the BIA.

The Government concedes that 8 U.S.C. § 1101(a)(47)(A), which defines "order of deportation," now applies to orders of removal as well. This definition contains plain language that deportation orders can be entered only by special inquiry officers—not the BIA, which is specifically charged by the statute with affirming such orders on appeal in order to make them effective.[2] *See Noriega–Lopez*, 335 F.3d at 883 ("The BIA (in its sole appearance in the statute) is restricted to affirming such orders, not issuing them in the first instance."). As we pointed out in *Noriega–Lopez*, regulations in effect at the time Congress passed 8 U.S.C. § 1101(a)(47) defined "immigration judge" to mean a "special inquiry officer and may be used interchangeably with the term special inquiry officer wherever it appears in this chapter." 8 C.F.R. § 1.1(*l*) (1996).

Moreover, nothing in the regulations enumerating the powers of the BIA indicates that the scope of those powers goes beyond appellate review of immigration judges' decisions and other "administrative adjudications." 8 C.F.R. § 1003.1(d)(1) ("The Board shall function as an appellate body charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it."); *see also* § 1003.1(b)(2) (appellate jurisdiction over decisions of immigration judges in deportation cases).

This is in contrast to the regulations enumerating the powers and authority of immigration judges. *See id.* § 1240.1(a)(1)(i) (authority to issue order of removal pursuant to INA § 240(c)(1)(A)); *id.* § 1240.12(c) ("The order of the immigration judge shall direct the respondent's removal, or the termination of the proceedings, or such other disposition of the case as may be appropriate."); *id.* § 1240.13(d) ("If the immigration judge decides that the respondent is removable and orders the respondent to be removed, the immigration judge shall advise the respondent of such decision . . . ."); *see also id.* § 1241.1 ("An order of removal *made by the immigration judge* . . . shall become final [inter alia] [u]pon dismissal of an appeal by the Board of Immigration Appeals;[or][u]pon expiration of the time allotted for an appeal if the

---

**2.** 8 U.S.C. 1101(a)(47) provides:

(A) The term *"order of deportation"* means the order of the *special inquiry officer,* or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

(B) The order described under subparagraph (A) shall become final upon the earlier of—
(i) a determination by the Board of Immigration Appeals affirming such order; or
(ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.
(emphasis added).

respondent does not file an appeal within that time." (emphasis added)).

The Government argues that the present case is distinguishable from *Noriega–Lopez* because, in that case, the IJ determined that petitioner was not removable. In contrast, the Government argues, a finding that an applicant is removable, such as the IJ's finding in this case, is essentially equivalent to an "order" of removability:

> Here the special inquiry officer (immigration judge) determined that Petitioner was removable, and the Board concurred in that uncontested finding on appeal. *See also* 8 U.S.C. § 1101(a)(47)(B) (such order "shall become final upon ... a determination by the Board of Immigration Appeals affirming such order; or ... expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals").

Accepting the Government's interpretation of the interplay between a finding of removability and an actual order of removal would render the IJ's discretionary ability to literally "cancel removal" meaningless, because a finding of removability in the first instance is a prerequisite to such discretionary relief. 8 U.S.C. § 1229b(b)(1) (providing circumstances under which "the Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States").

The Government's reasoning is also flawed because it conflates the BIA's uncontested *substantive* power to reverse a finding of removability or eligibility for cancellation of removal on appeal with the *procedural* power to issue the order of removal that results from such a reversal. (Resp't's Opp'n to Pet'r's Mot. for Remand, at 7) ("[O]nce the Board reversed the immigration judge's order granting cancellation of removal, there was nothing left to do, but affirm the immigration judge's finding that Petitioner is removable, and enter an appropriate order disposing of the matter on appeal."). There is no statutory authority or case law that supports the assertion that a finding that a petitioner is removable is the same thing as an order of removal and, indeed, the Government points to none on appeal.

The Government correctly points out that 8 C.F.R. § 1003.1, which delimits the powers vested in the BIA, gives Board members the power to "take any action consistent with their authorities under the Act and regulations as is appropriate and necessary for the disposition of the case." 8 C.F.R. 1003.1(d)(1)(ii). But the key language in that provision is "*consistent with their authorities under the Act and regulations.*" *Id.* (emphasis added). There is simply no "authority" under the INA or any regulation for the BIA to issue an order of removal. Instead, "[t]he current INA ... spells out the manner in which the Attorney General is to exercise his authority to order aliens removed, namely, through proceedings instigated by the INS before immigration judges, resulting in removal orders issued, after a full hearing, by one of those judges." *Noriega–Lopez,* 335 F.3d at 884.

In light of the absence of any principled distinction between the statutes and procedures governing this case from those at issue in *Noriega–Lopez,* we apply that case and hold that the BIA acted *ultra vires* in issuing a deportation order instead of remanding to the IJ.

## CONCLUSION

▮ The BIA's *ultra vires* act of issuing the order of removal renders that portion of the proceedings a "legal nullity." *No-*

riega–Lopez, 335 F.3d at 884 (citing Reynaga v. Cammisa, 971 F.2d 414, 417 (9th Cir.1992)). Because the BIA chose not to remand to the IJ for the issuance of the order, no final order of removal exists in this case that would provide jurisdiction for this court under § 1252. Even though the BIA's order is a legal nullity, the same defect that makes it invalid prevents us from invalidating it; however, the order could be reviewed under 28 U.S.C. § 2241. See Noriega–Lopez, 335 F.3d at 884–85.

■ We therefore treat the petition for review as a petition for writ of habeas corpus. See Cruz–Aguilera v. INS, 245 F.3d 1070, 1073 (9th Cir.2001) (order transferring case); see also Arreola–Arreola v. Ashcroft, 383 F.3d 956, 964–65 (9th Cir.2004). Although we lack jurisdiction to entertain an original habeas petition, see Cruz–Aguilera, 245 F.3d at 1073, we may transfer the petition to the district court under 28 U.S.C. § 1631. See Cruz–Aguilera, 245 F.3d at 1074 ("Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice.").

The district court has jurisdiction to consider Molina's petition under 28 U.S.C. § 2241, and it "could have exercised jurisdiction at the time the action was filed." Cruz–Aguilera, 245 F.3d at 1074. Our prudential requirement that a petitioner exhaust "available judicial and administrative remedies," Castro–Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir.2001), would not have barred the district court from considering Molina's habeas petition at the time he filed his petition for review. See Noriega–Lopez, 335 F.3d at 880 (finding that "[t]he district court ... properly exercised jurisdiction over [an] issue" on habeas, because "[w]e ... had no jurisdiction on direct review to consider" the issue).[3] Moreover, transfer of this case "would serve the interests of justice by preventing unnecessary delay by requiring [Molina] to re-file in the district court." Arreola–Arreola, 383 F.3d at 965. In addition, it would ensure that Molina has the opportunity to challenge the ultra vires removal order before the government seeks to remove him using it.

Accordingly, we treat Molina's petition for review as a petition for habeas corpus and order it transferred to the United States District Court for the Northern District of California, San Francisco division. Upon transfer, Molina may make any necessary amendments to perfect the form of the petition.[4]

TRANSFERRED.

---

3. Nor does 8 U.S.C. § 1252(d)(1) bar relief, despite petitioner's failure to move the BIA to reopen or reconsider its decision. See Noriega–Lopez, 335 F.3d at 880–81 ("[M]otions to reconsider, like motions to reopen, are not 'remedies available ... as of right' within the meaning of 8 U.S.C. § 1252(d)(1)."); Sun v. Ashcroft, 370 F.3d 932, 939 (9th Cir.2004) (holding that section 1252(d)(1) applies to habeas petitions).

4. We note that this decision will in no way inhibit full judicial review of Molina's claim regarding cancellation of removal. As in Noriega–Lopez, the district court should remand to the IJ for further proceedings. 335 F.3d at 884. If the IJ issues a removal order, the normal course of appeal will bring the matter within our appellate jurisdiction, allowing Molina to argue the merits of his claim to this court.