# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-3373/3755

_____

Angel Abad Solano-Chicas,           *
                                                *

                 Petitioner,         *
                                                *  Petition for Review of an

     v.                            *  Order of the United States
                                                  *  Board of Immigration Appeals.

Alberto Gonzales, Attorney       *
General of the United States     *
of America,[1]                      *
                                                *

             Respondent.      *

_____

Submitted: November 18, 2005
Filed: March 17, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

Angel Abad Solano-Chicas petitions for review of the decisions of the Board of Immigration Appeals (BIA) ordering him removed from the United States, and denying his motion to reopen such that he could apply for an adjustment of status. We deny the petitions.

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as appellee pursuant to Federal Rules of Appellate Procedure 43(c).

## BACKGROUND

Solano-Chicas is a thirty-seven-year-old native and citizen of El Salvador. He entered the United States over twenty years ago, and became a lawful permanent resident on October 24, 1986. Since September 5, 1998, he has been married to Janine Solano, who is a naturalized United States citizen and the mother of three of Solano-Chicas's children.[2]  On February 11, 2003, Solano-Chicas pled guilty to Second-Degree Criminal Sexual Conduct in Minnesota state court. He was alleged to have fondled a nine- or ten-year-old girl who was staying at his house. He was sentenced to a ten-day term of imprisonment, to be followed by eighty days of home confinement. Subsequently, the government instituted proceedings to deport Solano-Chicas.

During the pendency of these removal proceedings, Solano-Chicas returned to state court in an attempt to withdraw his guilty plea on his criminal sexual conduct conviction. He proceeded on the theory that he did not intend to plead guilty to that offense and that he was innocent of the crime charged. Solano-Chicas's motion to withdraw his guilty plea was granted, and in the same proceeding, Solano-Chicas entered a plea of guilty to the gross misdemeanor charge of Fifth-Degree Assault. Solano-Chicas, who was being held in custody due to an immigration detainer, did not appear for the criminal proceedings. Rather, his plea to the Fifth-Degree Assault charge was based on his signed petition to enter a plea of guilty and the same set of facts that originally led to the criminal sexual conduct charge, namely, an offense of unwanted touching involving a nine- or ten-year-old victim.

Based on the above circumstances, the Immigration Judge (IJ) found that Solano-Chicas was removable, as he had been convicted of a crime involving child abuse. The IJ then considered whether to grant Solano-Chicas cancellation of

_____

[2]Solano-Chicas has two other children from previous relationships.

removal, allowing him to remain in the United States. The IJ observed the correct legal standard; that is, whether the factors in favor of allowing Solano-Chicas to stay outweighed the factors supporting removal. See 8 U.S.C. § 1229a(c)(4)(B). According to the IJ, the factors in favor of cancellation were Solano-Chicas's familial ties and long-term residence in the United States. Forcing Solano-Chicas to leave the country would impose a significant emotional and financial hardship not only on Solano-Chicas, but also on his wife and children. Moreover, because Solano-Chicas had no strong ties in El Salvador, returning him there would be very burdensome to him. On the other hand, the IJ recognized that Solano-Chicas had a criminal history that was not insubstantial, and that he did not perform well on supervised release. The IJ also was concerned that Solano-Chicas had unpaid child support and tax arrears. Troubled, the IJ stated that "[u]ltimately, the Court's not really thrilled with either outcome in this case," but considering all the factors, the IJ "tip[ped] the scales in [Solano-Chicas's] favor," allowing him the privilege of cancellation of removal. (IJ Order at 27.)

The Department of Homeland Security (DHS) appealed to the BIA. The BIA affirmed the IJ's finding that Solano-Chicas was removable, but reversed the IJ's decision that Solano-Chicas was entitled to cancellation of removal. The BIA stated that although Solano-Chicas had some factors, such as familial ties, that weighed in his favor, those factors "cannot outweigh the seriousness of the circumstances surrounding his extensive criminal record for purposes of his application for cancellation of removal." (BIA Order on Cancellation of Removal at 4.)

Subsequently, Solano-Chicas moved to reopen his case on the basis that he was entitled to an adjustment of status because he was married to a United States citizen. The BIA denied the motion, characterizing his Fifth-Degree Assault conviction as a crime of moral turpitude that disqualified him for an adjustment of status. This appeal followed.

**ANALYSIS**

We discern essentially three issues in this appeal: (1) whether the BIA, as opposed to the IJ, had the power to order Solano-Chicas removed, (2) whether and to what extent we may review the BIA's discretionary decision to deny cancellation of removal, and (3) whether the BIA abused its discretion in finding Solano-Chicas's Fifth-Degree Assault conviction was a crime of moral turpitude.

## I.    BIA AUTHORITY TO ORDER AN ALIEN REMOVED

Solano-Chicas asserts that the BIA has authority to affirm or reverse an order of an IJ, but cannot order an alien removed on its own. If that is true, the BIA acted beyond the scope of its power in this case by ordering Solano-Chicas removed, and its order to that effect is a nullity. Without a final order of removal, we would have no jurisdiction to consider the petition.

To our knowledge, only one circuit has considered this issue, and it favors Solano-Chicas's position.[3] In <u>Molina-Camacho v. Ashcroft</u>, 393 F.3d 937 (9th Cir. 2004), the court was presented with precisely the situation we have. The petitioner, a removable alien from Mexico, was granted cancellation of removal by the IJ. The government appealed, and the BIA reversed and entered an order removing Molina-Camacho. In his petition for review, Molina-Camacho argued that the BIA acted beyond its power when it ordered him removed, because removal authority was vested solely in the IJ. The Ninth Circuit agreed; in reviewing the Immigration and Naturalization Act, the court noted that the BIA, as an appellate body, was essentially tasked with affirming or reversing IJ decisions. <u>Id.</u> at 940. The court opined that the

_____

[3]We are aware that the issue is currently pending before the Seventh Circuit in the case of <u>Guevara v. Gonzales</u>, No. 05-2696, and before the Tenth Circuit in the case of <u>Sosa v. Gonzales</u>, No. 05-9582, but no decision has been issued in either case as of this writing.

BIA did not, however, have authority to issue orders of removal in the first instance. Id. Thus, even though the IJ had found Molina-Camacho removable and the BIA had reversed the IJ's decision cancelling removal, the actual order of removal was still left up to the IJ, not the BIA. Id. at 941 ("The Government's reasoning is also flawed because it conflates the BIA's uncontested *substantive* power to reverse a finding of removability or eligibility for cancellation of removal on appeal with the *procedural* power to issue the order of removal that results from such a reversal.").[4]

With respect, we part ways with the Ninth Circuit in this case. There can be no doubt that the IJ in the first instance possesses the power to determine whether an alien is removable, 8 U.S.C. § 1229a(a)(1), and to order an alien deported, 8 U.S.C. § 1101(a)(47)(A). Once a finding of removability has been made, the burden is on the alien to show that he or she is eligible for relief from removal. 8 U.S.C. § 1229a(c)(4)(a). Absent that showing, however, an order of removal is appropriately entered by an IJ, and becomes final, inter alia, upon an order from the BIA affirming the IJ's order. 8 U.S.C. § 1101(a)(47)(A) & (B). Thus, it follows that where the BIA reverses the IJ's order granting cancellation of removal, the BIA, in essence, gives effect to the IJ's order of removability, for the BIA decision eliminates the impediments to removal. It would be an imprudent expenditure of resources to require that the case nonetheless be remanded to the IJ for an actual order of removability to be entered, a proposition that we believe neither Congress nor the Attorney General intended.

---

[4]DHS represented in its brief that it was seeking to have Molina-Camacho reversed. At oral argument, however, DHS admitted that Molina-Camacho was final, and "clarified" that it may ask for reconsideration of the principles announced in Molina-Camacho in future cases. Our research indicates DHS has not done so, and the decisions of the Ninth Circuit, as well as BIA decisions within the circuit, have consistently followed Molina-Camacho. See, e.g., Diaz-Toscano v. Gonzales, 127 Fed. App. 376 (9th Cir. 2005) (unpublished). While the DHS's apparent lack of candor troubles this court, it does not affect our decision.

Recent amendments to the applicable regulations convince us that our approach is consistent with the intent of the Attorney General. In order to ensure that aliens are properly documented prior to the grant of immigration relief, the regulations have been amended to require an investigation into the identity of the alien. See 70 Fed. Reg. 4743, 4752-53 (Jan. 31, 2005) (amending 8 C.F.R. § 1003.1). The amendment is telling: it requires that such an investigation be completed before the BIA issues any decision "affirming *or granting* to an alien an immigration status, relief or protection from removal, or other immigration benefit." 8 C.F.R. § 1003.1(d)(6)(i) (Apr. 1, 2005) (emphasis added). Thus, contrary to the Ninth Circuit's view, the BIA's power is not just one of merely affirming or reversing IJ decisions; it may order relief itself. Compare Molina-Camacho, 393 F.3d at 940 (holding that "nothing in the regulations enumerating the powers of the BIA indicates that the scope of those powers goes beyond appellate review of immigration judges' decisions and other 'administrative adjudications'" (quoting 8 C.F.R. 1003.1(d)(1))), with 8 C.F.R. 1003.1(d)(6)(i) (presuming the BIA maintains the power to "grant" immigration relief). We find it entirely consistent that the BIA also may deny status and order an alien removed.

## II.     REVIEW OF THE CANCELLATION OF REMOVAL DECISION

The Immigration and Naturalization Act limits our jurisdiction to review discretionary decisions of the BIA. Reyes-Vasquez v. Ashcroft, 395 F.3d 903, 906 (8th Cir. 2005). As such, we may not generally review the BIA's decision to deny an alien cancellation of removal. Id. We retain the power, though, to "consider the predicate legal question whether the [BIA] properly applied the law to the facts in determining an individual's eligibility to be considered for the relief." Id.

Solano-Chicas argues that the BIA erred when it improperly considered unproven criminal allegations as a reason to deny relief. He contends that the BIA decision denying cancellation of removal was based on his conviction for sexual

assault, which was subsequently vacated and replaced with a conviction for Fifth-Degree Assault.

The record does not support this argument. The BIA's decision makes clear that it is the entirety of Solano-Chicas's criminal record, together with the failure of proof on the issue of rehabilitation, that moved the Board. It cited a number of Solano-Chicas's past convictions, including trespassing, careless driving, DWI, disorderly conduct, as well as the assault conviction, as evidence that he had an extensive criminal history. It also noted probation violations for these offenses. Lastly, to the extent that the BIA stated that the assault involved "sexual actions against a 10-year old girl," (BIA Order on Cancellation of Removal at 4), the BIA was not going beyond the record. If Solano-Chicas had made some new factual record in support of the Fifth-Degree Assault charge, we agree that the BIA would be limited to that record. That is not what happened, however. Solano-Chicas relied on the proceedings underlying his sexual assault plea hearing as the factual basis when he pled guilty to Fifth-Degree Assault. Those allegations *did* involve the improper touching of a young girl. Although Solano-Chicas contested that this conduct made him guilty of sexual assault, he agreed that he was at least guilty of Fifth-Degree Assault. We cannot fault the BIA for relying on the same evidence that the Minnesota district court considered in Solano-Chicas's guilty plea proceedings.

## III. THE DENIAL OF ADJUSTMENT OF STATUS BASED ON COMMITTING A CRIME OF MORAL TURPITUDE[5]

After the BIA ordered Solano-Chicas removed, he filed a motion to reopen. He argued he was entitled to an adjustment of status due to being married to a United States citizen. The BIA denied relief, finding that he was ineligible for an adjustment since he was convicted of a crime of moral turpitude. The conviction relied upon by the BIA in support of this finding was Solano-Chicas's Fifth-Degree Assault conviction.

Moral turpitude is not defined by statute, and has instead been left for administrative interpretation. Chanmouny v. Ashcroft, 376 F.3d 810, 811 (8th Cir. 2004). We thus give deference to the BIA's determination of what constitutes a crime of moral turpitude, "and we uphold its construction as long as it is reasonable." Id. As explained in Chamouny, the BIA has developed an analytical framework for determining if a conviction involves a crime of moral turpitude:

> In deciding whether a crime involves moral turpitude, we must first examine the statute itself to determine whether the inherent nature of the crime involves moral turpitude. If the statute defines a crime in which moral turpitude necessarily inheres, then the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends. However, if the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a "divisible" statute, and we look to the record of conviction, meaning the

---

[5]DHS contends that Solano-Chicas waived this issue by not raising it before the BIA. Our review of the record indicates that the crime of moral turpitude issue was not addressed by anyone, however, until the BIA's decision denying an adjustment of status. We cannot fault Solano-Chicas for not arguing about an issue that was not even considered until the BIA's final decision, and think it inappropriate to foreclose Solano-Chicas's argument on this point.

indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted.

Id. (quoting In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999)).

We find no error in the BIA's order denying the motion to reopen. The BIA references the record of conviction for Solano-Chicas's crime of Fifth-Degree Assault, indicating that it did not regard Fifth-Degree Assault convictions as inherently involving moral turpitude. Accord Chanmouny, 376 F.3d at 814 (noting that the BIA and other courts have failed to classify simple assault as a crime of moral turpitude). Rather, the BIA viewed the statute as divisible and based its moral turpitude finding on the circumstances of the offense. There were clearly grounds for that ruling. As mentioned above, the Fifth-Degree Assault involved the same factual basis for the earlier sexual assault charge.

## CONCLUSION

Having jurisdiction to review the order of removal in this case, we find no error in its issuance. Likewise, the BIA properly denied Solano-Chicas's motion to reopen the matter. Accordingly, we deny the petition.

_____