Salvador **CASTREJON–GARCIA,**
Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE,** Respondent.

No. 93–70617.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1995.

Decided March 10, 1995.

Ralph J. Leardo, Law Offices of Nancy Ann Fellom, San Francisco, CA, for petitioner.

David M. McConnell, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: CANBY and NOONAN, Circuit Judges, and SAMUEL P. KING,* District Judge.

NOONAN, Circuit Judge:

Salvador Castrejon–Garcia (Castrejon) petitions for review of the decision of the Board of Immigration Appeals (the Board) denying him suspension of deportability and ordering his deportation. We grant his petition.

## FACTS

Castrejon was born May 23, 1953, in Coalcoman, Michoacan, Mexico. He entered the United States without inspection in 1970 and has lived in the United States since that date. He currently resides in his home in Modesto, California, with his wife and three children aged 17, 5, and 2. He is a carpenter, a licensed general contractor, and the sole proprietor of a business employing ten persons in construction work.

In 1975 he was convicted of transporting aliens inside the United States in violation of 8 U.S.C. § 1324(a)(2) (now 8 U.S.C. § 1324(a)(1)(B)); he was sentenced to six months in jail and five years probation; on reentering the country in violation of his probation, he was convicted of the violation and served 18 months in jail.

In 1983 he went to Mexico, seeking a visa to permit his legal entry into the United States. The United States Consulate denied his application under the mistaken impression that his conviction for transporting aliens inside the United States made him an excludable alien. He returned without the visa to the United States. In 1988 he tried again. On January 14, 1988, he went to Mexico. He had an appointment at the United States Consulate in Ciudad Juarez on January 19. His wife was due to give birth on January 24. Unexpectedly, the child was born on January 15. The consulate failed to grant the visa on January 19. Castrejon thought he should return to his wife and baby. He did so on January 22 without waiting for the visa. He was caught by the Immigration and Naturalization Service (the Service), tried with remarkable speed, convicted of illegal entry on January 25, and incarcerated for thirty days. The Service then initiated these proceedings to deport him.

## PROCEEDINGS

In November 1988 the Service sought his deportation. Castrejon asked for suspension of deportation pursuant to 8 U.S.C. § 1254. The Immigration Judge granted suspension.

Almost five years later, on May 19, 1993, the Board sustained the Service's appeal from this order and reversed the grant of suspension. It remanded to the Immigration Judge for a determination of voluntary departure in lieu of deportation. Castrejon appealed to this court from the Board's decision.

On March 22, 1994, the Immigration Judge granted Castrejon voluntary departure. The Service had opposed Castrejon's request with what the Immigration Judge described as "a vehement opposition." However, the Immigration Judge found that Castrejon "easily" satisfied the requirement of good moral character and was entitled to this benefit.

Castrejon's appeal from the Board's decision is now before this court.

## ANALYSIS

■ *Jurisdiction.* According to the statute, appeals of "all final orders of deportation" are governed by 8 U.S.C. § 1105a(a). A "petition for review may be filed not later than 90 days after the issuance of the final order." 8 U.S.C. § 1105a(a)(1). The Service contends that Castrejon filed his petition for review prematurely from the decision of the Board, rather than from the decision of the Immigration Judge granting voluntary departure.

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

The Service is incorrect. The order of the Board was a final order of deportation. *Perkovic v. INS*, 33 F.3d 615, 618 (6th Cir.1994). The Service inappropriately cites *Chu v. INS*, 875 F.2d 777, 780 (9th Cir.1989), in which we held that an appeal from a decision of the Board was a nullity when the petitioner had moved the Board to reconsider its order; plainly, an order that was open for reconsideration by the Board was not final and the petitioner could not maintain a proceeding before us simultaneously with his proceeding before the Board. In the instant case, there was nothing pending before the Board and the petitioner had no reason or basis for appealing the Immigration Judge's decision in his favor. He properly appealed the final order requiring his deportation. *Perkovic*, 33 F.3d at 618–19.

█ *Castrejon's continuous presence in the United States.* The Board reversed the grant of suspension of deportability on a single ground. The statute permitted suspension for a person of good moral character whose deportation in the opinion of the Attorney General would result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child who is a citizen of the United States, if the alien had been "physically present in the United States for a continuous period of not less than seven years." The Immigration Judge found that Castrejon was a person of good moral character and that his deportation would result in extreme hardship to him and his family. Castrejon's problem, in the Board's eyes, was his eight-day trip to get a visa in 1988.

Under the statute an "alien shall not be considered to have failed to maintain continuous physical presence in the United States ... if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." 8 U.S.C. § 1254(b)(2). The Board found that Castrejon did not meet this standard because his trip to Mexico was not casual. It is desirable to set out the Board's reasoning on this point, which was as follows:

> Based upon the complex process which culminated in the respondent's being required to depart the United States in order to obtain a sought after immigration

benefit and based upon the deliberateness of character evidenced by such a departure, we conclude that the respondent's departure cannot be considered casual in nature. To find, in the context of the immigration laws, that a departure undertaken for the express purpose of obtaining an immigration benefit, occasioned only after having undergone an extensive and complicated application procedure, and required by immigration authorities is "casual" would be to effectively delete that term from the Act. Every word and clause used by a legislative body is to be given effect. *See* Sutherland, *Statutory Construction* § 380 (2nd ed. 1904 [sic]). Accordingly, we conclude that the respondent's departure from the United States in an attempt to obtain an immigrant visa was not a casual departure and the statutory exception under section 244(b)(2) of the Act is unavailable.

The Board, it will be observed, offered no formal definition of "casual" nor any authority for the interpretation which it gave of a word carrying at least twelve distinct meanings in Webster's Third New International Dictionary. Apparently the Board understood "casual" to be the same as "unstudied" or "informal," definition 4(b) in Webster's.

█ We are bound to defer to an administrative agency's determination of a term within its statutory meaning, unless the agency's interpretation is plainly contrary to the sense intended by the Congress. *US DOC v. FERC*, 36 F.3d 893, 896 (9th Cir. 1994); *Chemical Mfrs. Assn. v. NRDC*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985). The Board's interpretation is plainly contrary. The Board's interpretation penalizes a good faith effort to comply with the immigration laws of our nation.

█ The evident statutory purpose is to recognize that a person who lives for seven continuous years in the United States does not destroy his eligibility by actions that do not affect his commitment to living in this country, and thus do not render his deportation less harsh or unexpected. *See, Kamheangpatiyooth v. INS*, 597 F.2d 1253, 1256–57 (9th Cir.1979). *Kamheangpatiyooth* preced-

ed *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), which held that *any* absence precluded relief. Congress passed section 1254(b) in order to overrule *Phinpathya.* See H.R.Rep. No. 99–682(I), 99th Cong., 2nd Sess. at 78, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5649, 5682. In light of that history, we conclude that the authority of *Kamheangpatiyooth* remains undiminished. Of course, if the alien goes away for a long period, he is interrupting his physical presence and his departure from the country cannot be characterized as "brief." *See Kamheangpatiyooth,* 597 F.2d at 1259. Of course, if the alien leaves the country in order to plan a crime, his departure cannot be characterized as "innocent." Of course, if the alien leaves the country in order to serve a foreign government, he must be said to have "meaningfully interrupted" his physical presence here. Of course, if he regularly crosses the border to run a business in a neighboring country his absence cannot be construed as "casual." When his absence is for no more than eight days as it was here, his absence is brief. When the purpose of his absence, as here, is to obtain a visa, his absence is innocent. When the purpose of his absence is to regularize his status in this country, he has not meaningfully interrupted his physical presence. And when his absence is on a single occasion it is casual in the sense of Webster's definition 2(a), "performed without regularity" or "occasional." There is not the slightest need to read "casual" out of the statute. To the contrary, it must be given appropriate attention so that the statute is not construed to penalize an effort to become a lawful resident by a man who has been in this country continuously for twenty-five years, has a family, a business, and a moral character that has been determined to meet the statutory standard.

The case is characterized by the remarkable determination of the Service and the Board to rid this country of a resident of twenty-five years standing whose principal fault has been his desire to regularize a residence acquired as a youth of seventeen. Discretion, which is a normal requirement for the fair execution of every governmental duty, has been conspicuously in abeyance in a pursuit worthy of Inspector Javert.

The petition for review is **GRANTED.** The case is **REMANDED** to the Board for proceedings consistent with this opinion.