# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACINTO PASCOUL FERNANDES,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,

                    *Respondent.*

No. 07-72415

Agency No.
A095-402-188

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 15, 2010—San Francisco, California

Filed August 20, 2010

Before: William A. Fletcher and Milan D. Smith, Jr.,
Circuit Judges, and James Dale Todd,
Senior District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable James Dale Todd, Senior United States District Judge
for the Western District of Tennessee, sitting by designation.

## COUNSEL

Daniela R. Razawi, Law Office of Daniela R. Razawi, Lincoln, California, for petitioner Jacinto Pascoul Fernandes.

Gregory G. Katsas, Acting Assistant Attorney General, Barry J. Pettinato, Assistant Director, and Terri Leon-Benner, Trial Attorney, Office of Immigration Litigation, United States Jus-

tice Department, Civil Division, for respondent Eric H. Holder Jr., United States Attorney General.

## OPINION

M. SMITH, Circuit Judge:

Jacinto Pascoul Fernandes, an Indian citizen, petitions for review of the Board of Immigration Appeals' (BIA's or Board's) decision denying his application for asylum and withholding of removal on the ground that he filed a fraudulent asylum application and was not credible. We deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Fernandes seeks asylum and withholding of removal based on alleged persecution for his Christian beliefs and for imputed political opinion.[1] Although Fernandes's story varied throughout the immigration proceedings, he generally alleges that his persecution arose out of an arrest at a Sikh rally which he attended as a sympathizer to the plight of non-Muslim religions in India.

## I. Asylum Application and Hearing

In his asylum application, Fernandes claimed that he was beaten by police after his arrest at the Sikh rally, and that a year later the police came to his home looking for him. Unable to find Fernandes, they arrested his wife and infant child instead. Fernandes claimed that his wife was raped while in custody.

---

[1]Fernandes did not challenge the IJ's determination that he was not entitled to relief under the Convention Against Torture (CAT) in either his appeal to the BIA, or on appeal to this court. Any challenge to the IJ's CAT determination is therefore waived. *See* 8 U.S.C. § 1252(d)(1); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

During his first asylum hearing, Fernandes testified about his alleged arrest at the Sikh demonstration and the subsequent arrest of his family. He also said that the police returned to his home a second time and that drunk officers tied him to a chair, beat him, and threatened that he would be killed unless he fled the country. On cross-examination, Fernandes admitted that he had joined the Sikh demonstration in 2000 because he sympathized with their causes but that he did not know much about the Sikh religion. He acknowledged that hundreds of participants, including other Christians, took part in the demonstration. He said that his neighbors, who were Hindus, told the police that he would be attending the demonstration but could not explain why he was targeted.

Fernandes also testified about a number of facts that he later admitted were false. He claimed that he lived with a friend in Elk Grove, California; that he had been employed as a hotel musician in India; and that he had last spoken to his wife the day before the initial hearing before the IJ. He also stated that he attended a Catholic church in Elk Grove and that he rode his bicycle to church. During the hearing, Fernandes declined the opportunity to make changes to his declaration or application.

Fernandes also admitted that he was fluent in English, even though he had previously claimed that he did not speak English when requesting a translator.[2] He explained this discrepancy by saying he was afraid to admit that he spoke English because he thought he would be in trouble for requesting a translator. He did not explain why he requested a translator in the first place.

Finally, when asked about a conflict between his application, which indicated that he had been unemployed since

---

[2]The translator Fernandes obtained was Kashmir Singh Malhi, the business partner of Boota Singh Basi. We describe below Basi and Malhi's fraudulent asylum application scheme.

October 1996, and his testimony, in which he claimed to have worked as a professional musician until 2001, Fernandes claimed that Boota Singh Basi (Basi), his application preparer, had made an error. When asked to explain this inconsistency further, Fernandes said: "I have no answer for that."

## II. First IJ Decision

The IJ issued a lengthy opinion denying Fernandes's application. The IJ did not make an adverse credibility finding, but she repeatedly expressed doubt about his credibility and stated that she could not "give his testimony full weight as evidence." The IJ noted ambiguities and inconsistencies in the record, including the fact that Fernandes had an opportunity to correct his lie about speaking English, but chose not to do so. The IJ also found that Fernandes failed to demonstrate a "nexus" between the alleged harm and a protected ground, thus concluding that he was not entitled to asylum or withholding of removal.

## III. First BIA Decision

On appeal, the BIA held that it would assume that Fernandes was credible because the IJ had not made an explicit adverse credibility finding and had not identified any bases sufficient to support such a finding. Based on that assumption, the BIA found that Fernandes had satisfied his burden of proving past persecution, which gave rise to a rebuttable presumption that Fernandes would face future persecution. Accordingly, the BIA remanded the case to the IJ to provide the Department of Homeland Security (DHS) an opportunity to provide additional evidence to rebut the presumption that Fernandes has a well-founded fear of future persecution. The remand order stated:

> [T]he record will be remanded to allow the DHS an opportunity to establish that since the time the persecution occurred conditions in the respondent's coun-

try have changed to such an extent that the respondent no longer has a well-founded fear of being persecuted if he were to return to his country. Accordingly, the following order is entered.

ORDER: The appeal is sustained and the record is remanded for further proceedings consistent with the foregoing opinion.

## IV. Second Asylum Hearing

On remand, the government filed a motion with the IJ to reopen under 8 C.F.R. § 1003.23, seeking to introduce new evidence that Fernandes had knowingly filed a fraudulent asylum application. In its motion, the government proffered the testimony of Basi, who had prepared Fernandes's application. Basi and his partner Kashmir Singh Malhi (Malhi) ran a business preparing fraudulent asylum applications, and Basi pled guilty to conspiracy to make false statements under oath with respect to asylum applications.[3] The IJ granted the government's motion to reopen, over Fernandes's objection.

At the second asylum hearing, Basi testified that he and Mahli had operated a business creating and filing false asylum applications for Indian aliens. Basi pled guilty to charges stemming from this conduct. Although testifying against his former clients was not a formal condition of Basi's plea agreement, Basi agreed to cooperate with the government by testifying against former clients and, in exchange, received a reduced sentence of eleven months (time served). To orchestrate their fraudulent scheme, Basi and Malhi had their clients sign blank asylum applications. Basi and Malhi then completed the applications by inserting entirely fabricated stories of persecution, except for some accurate basic information.[4]

---

[3]Basi testified that the government had removed Mahli to India as a result of Mahli's involvement in the fraudulent scheme.

[4]Name, date and place of birth, and similar information about family members.

Basi testified that none of his clients had ever presented him with a genuine claim and that every application he had ever filed was false.

Basi also testified that he recognized Fernandes as a former client for whom he had filed a fraudulent asylum application. He stated that Fernandes had responded to one of Basi's advertisements and that they had met in New York to discuss the application. Because Fernandes lived in New Jersey, Basi used his friend's California address on Fernandes's application. As was his practice, Basi gave Fernandes a blank asylum form and asked him to sign it and provide the basic biographical information. Basi then returned to California and created a fictional story about Fernandes's arrest at a Sikh rally. As the hearing date neared, Fernandes flew to California, where Basi coached him for two to three days to help him learn the false narrative and prepared him to testify concerning it.

During the hearing, Basi was presented with a folder that the INS had confiscated from his office. He identified it as his work folder for Fernandes's application. Basi testified that his recollection of Fernandes's case was particularly good because Fernandes was one of his few Christian clients—the majority of his clients being Sikh.

Next, Fernandes took the stand and admitted that he had given a false California address and that Basi had prepared his asylum application. He admitted that he had contacted Basi for help with his asylum application and that the pair had met in New York. He said that he told Basi about his persecution in India and that Basi took notes on the story. Fernandes said that he signed a blank asylum application with the understanding that Basi would complete the application for him.

In addition to acknowledging the false address, Fernandes admitted in direct testimony that a statement in the application about Christians being burned alive in India was a lie added by Basi. On cross-examination, Fernandes also admitted that

he had lied under oath about the following facts: (1) that a minivan dropped him off in Elk Grove, California; (2) that he lived in Elk Grove; (3) that he rode a bicycle to church in Elk Grove; (4) that he worked at a Mobil station in New Jersey; and (5) when he had last contacted his wife. He also admitted that he never provided a written personal statement to Basi, as he had earlier claimed.

## V.   Second IJ Decision

In her second decision, the IJ found Fernandes not credible and denied his application for asylum, withholding of removal, and CAT relief. First, the IJ held that she had jurisdiction to consider the government's motion to reopen because the BIA's remand order was not limited. The IJ found that granting the motion to reopen was warranted because the new evidence was relevant to the case. She also held that Fernandes had knowingly filed a frivolous asylum application in violation of 8 U.S.C. § 1158(d)(6).

## VI.   Second BIA Decision

The BIA affirmed the IJ's second decision and dismissed Fernandes's appeal. It found that the IJ had properly considered the government's motion to reopen because the remand was not limited in scope and that the IJ had correctly determined that Fernandes was not credible and that he had filed a frivolous application. Fernandes filed a timely petition for review.

### JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 8 U.S.C. § 1252 to review final removal orders issued by the BIA. We must uphold the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4) (repealed 1996)). To reverse

a factual determination, we must find that the evidence compels a contrary conclusion. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). Legal conclusions are reviewed de novo. *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir. 2004).

## DISCUSSION

Fernandes argues that the IJ's consideration of the motion to reopen violated the BIA's remand order. He also asserts that the BIA's adverse credibility determination was not supported by substantial evidence and that the BIA erred in finding that Fernandes filed a frivolous application. We affirm the BIA on all counts.

## A.   Scope of the Remand Order

After determining that Fernandes had established past persecution, the BIA remanded the record to the IJ "to allow the DHS an opportunity to establish that since the time the persecution occurred conditions in the respondent's country have changed[.]" The order instructed that the record be "remanded for further proceedings consistent with the foregoing opinion." Fernandes claims that the IJ's consideration of the motion to reopen on remand was improper because the remand order "clearly and expressly required that the proceedings resulting from the order should be consistent with the BIA' [sic] opinion" and that "[r]e-assessing once again [Fernandes's] credibility was not consistent with the BIA's order to allow DHS to rebut the presumption of future harm." We disagree.

**[1]** In *Matter of Patel*, the BIA established the standard for the scope of remand orders, holding that:

> unless the Board qualifies or limits the remand for a specific purpose, the remand is effective for the stated purpose and for consideration of any and all

> matters which the Service officer deems appropriate in the exercise of his administrative discretion or which are brought to his attention in compliance with the appropriate regulations.

16 I. & N. Dec. 600, 601 (BIA 1978); *see also Matter of M— D—*, 24 I. & N. Dec. 138, 141 (2007) ("[W]e have historically treated a remand as effective for consideration of all matters unless it is specifically limited to a stated purpose."); *see also id.* at 142 ("In other words, the [IJ] has authority to consider new evidence [on remand] if it would support a motion to reopen the proceedings.").

**[2]** Here, the BIA remanded to allow the government to rebut the presumption of a well-founded fear of future persecution. However, as the Board noted in its subsequent decision, the remand order did not limit or qualify the IJ's ability to consider new evidence or motions. It simply directed the IJ to conduct further proceedings "consistent with" the Board's opinion. In *Matter of M—D—*, the Board remanded with directions for the IJ to conduct background checks. Although the *purpose* of the remand was to determine whether the requisite background checks had been completed, the *scope* of the remand was not restricted and did not prohibit the IJ from considering new evidence. 24 I. & N. Dec. at 141. In fact, in *Matter of M—D—*, the BIA held that the IJ erred in declining to consider the new evidence. *Id.* at 141-42. The Third Circuit has articulated a similar rule, holding that an IJ's jurisdiction is only narrowed when the Board expressly retains jurisdiction and qualifies or limits the remand to a specific purpose. *See Johnson v. Ashcroft*, 286 F.3d 696, 701-03 (3d Cir. 2002) (remand for consideration of a CAT claim did not limit the IJ's jurisdiction to consider other forms of relief).

**[3]** As a matter of first impression in our circuit we agree with the reasoning of the Third Circuit, and hold that the IJ's jurisdiction on remand from the BIA is limited only when the BIA expressly retains jurisdiction and qualifies or limits the

scope of the remand to a specific purpose. An articulated purpose for the remand, without any express limit on scope, is not sufficient to limit the remand such that it forecloses consideration of other new claims or motions that the IJ deems appropriate or that are presented in accordance with relevant regulations. The BIA is free to impose a different rule, but in the absence of such a rule we will construe a BIA remand to an IJ in the manner just described. In this case, the BIA did not retain jurisdiction and did not expressly limit the scope of the remand. Accordingly, we affirm the BIA's holding that the IJ properly considered the motion to reopen on remand.

## B. Adverse Credibility

Fernandes next argues that the IJ's adverse credibility determination is not supported by substantial evidence. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002).[5] Specifically, he contends that Basi was not a credible witness and that Fernandes did not misrepresent facts about himself.

**[4]** Fernandes concedes that Basi's testimony was consistent with his plea agreement and judgment. He suggests, however, that Basi was biased because he had an incentive to cooperate with the government in order to receive a light sentence. But, as the IJ reasoned, the fact that Basi initially had an incentive to cooperate with the government does not mean that he was biased against Fernandes specifically or that he had any ongoing incentive to testify against Fernandes after Basi's sentence had already been finalized. Basi's story was consistent and supported by the evidence. Moreover, Basi's testimony was largely consistent with Fernandes's story concerning their meeting and the process by which Basi prepared Fernandes's application. The only difference—albeit a crucial one—is that Basi claimed to have fabricated Fernandes's per-

---

[5]This case is not governed by the REAL ID Act of 2005, Pub. L. No. 109-13 (2005), because Fernandes filed his application before May 11, 2005.

secution story, as he did for all of his clients, while Fernandes maintains that the story was true. Fernandes provided no evidence other than his testimony that his account was true.

[5] Fernandes also suggests that Basi's story was not as "straightforward" as the IJ made it out to be. However, he points only to minor details of their interactions that Basi could not remember, for example, when they first met and whether the application had been faxed, mailed, or handed to Fernandes. These minor lapses in memory are consistent with Basi's testimony that he had trouble remembering the details of each individual application because he had prepared over one hundred of them. Significantly, Basi remembered more about Fernandes's case than about his other clients' cases because they spent a lot of time prepping and because Fernandes was one of his few Christian clients.

[6] Finally, Fernandes attempts to explain his misrepresentations about his address and his family's whereabouts. He says he gave a false address because Basi told him he needed a California address to file the asylum application in San Francisco. Although we distinguish between "false statements made to establish the critical elements of the asylum claim from false statements made to evade INS officials," *Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir. 1999), the IJ only relied on these misrepresentations as further evidence of Fernandes's lack of credibility. Ultimately, the IJ's determination was based on the evidence that Fernandes's claim of persecution was entirely fabricated, a fact that clearly goes to the "heart of the asylum claim." *Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990).

[7] We hold that the IJ's adverse credibility determination was supported by substantial evidence. Basi testified credibly and consistently that he had prepared and falsified Fernandes's asylum application, as he had done for at least a hundred other clients. To rebut this evidence, Fernandes relied only on his own testimony, which he eventually admitted was

riddled with misrepresentations. The IJ did not err in believing Basi over Fernandes. Thus, we affirm the finding that Fernandes was not credible, that his application was fraudulent, and that he was not entitled to asylum or withholding of removal.[6]

## C. Frivolousness

[8] "An asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. When an alien knowingly files a frivolous application after being informed of the consequences of doing so, "the alien shall be permanently ineligible for any benefits under [the Immigration and Nationality Act]." 8 U.S.C. § 1158(d)(6). In order to sustain a finding of frivolousness, (1) "an asylum applicant must have notice of the consequences of filing a frivolous application;" (2) "the IJ or Board must make specific findings that the applicant knowingly filed a frivolous application;" (3) "those findings must be supported by a preponderance of the evidence;" and (4) "the applicant must be given sufficient opportunity to account for any discrepancies or implausibilities in his application." *Ahir v. Mukasey*, 527 F.3d 912, 917 (9th Cir. 2008) (citing *In re Y—L—*, 24 I. & N. Dec. 151, 155, 157, 159-60 (2007)).

[9] Fernandes concedes that he received notice of the consequences of filing a frivolous asylum application, and that he was given an opportunity to account for discrepancies in his claim. Also, the IJ addressed the frivolousness finding separately and made specific findings about the fabrication, stating:

---

[6]Fernandes argues that he is entitled to withholding of removal "even if his application would be found to be frivolous." He is mistaken. Fernandes has not shown a well-founded fear of future persecution, and therefore cannot meet the stricter standard of proof for withholding of removal. *See Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000) (noting that a failure to satisfy the lesser standard for a grant of asylum necessarily results in a failure to demonstrate eligibility for withholding of removal).

At this point, because the Court has concluded that the respondent lacks credibility and has concluded that he did contract with Mr. Basi to prepare an application for which there is absolutely no evidence that the respondent provided substantive information, . . . [a]nd as the respondent has everything to lose by admitting that and Mr. Basi has little, if anything, to lose from his testimony and has been a much more straightforward witness, whereas the respondent has not, the Court concludes that the respondent has knowingly filed a frivolous application, it contains fabrications and was given [sic] the advisals and therefore, would be forever barred from any relief under the immigration laws of this country. The Court does not make this finding lightly.

**[10]** Fernandes argues that, although the IJ complied with all the procedural requirements of a frivolousness finding, she erroneously credited Basi's testimony over his own. This is a reiteration of his arguments regarding the adverse credibility determination, and we reject it for the same reasons previously discussed. *See* Part B *supra*. Our sister circuits have observed that "an adverse credibility determination alone cannot support a finding of frivolousness." *Ahir*, 527 F.3d at 918 (citing cases). In this case, however, the IJ gave cogent and convincing reasons for her specific finding that Fernandes's application was fraudulent. This finding was supported by a preponderance of the evidence. Therefore, we affirm the BIA's finding that Fernandes filed a frivolous application under 8 U.S.C. § 1158(d)(6).

## CONCLUSION

For the foregoing reasons, we AFFIRM the BIA's decision and DENY Fernandes's petition for review.

**PETITION FOR REVIEW DENIED.**