# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EPIFANIO TEO PINTO,
                        *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,
                        *Respondent.*

No. 06-73369

Agency No.
A072-530-318

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 8, 2010—Pasadena, California

Filed August 12, 2011

Before: Raymond C. Fisher and Jay S. Bybee,
Circuit Judges, and Edward F. Shea, District Judge.*

Opinion by Judge Bybee

---

*The Honorable Edward F. Shea, District Judge for the U.S. District
Court for Eastern Washington, Spokane, sitting by designation.

10775

**COUNSEL**

Sung U. Park, Esq., Law Offices of Sung U. Park, Los Angeles, California, for the petitioner.

Dalin R. Holyoak, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

BYBEE, Circuit Judge:

Epifanio Teo Pinto petitions for review of a decision by the Board of Immigration Appeals ("BIA") in which the BIA denied asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") but remanded the case to the immigration judge ("IJ") for voluntary departure proceedings. Because our jurisdiction is limited to the review of final orders of removal, 8 U.S.C. § 1252(a), we must first

decide whether the BIA's decision in this case is such an order. We have previously held that similar BIA decisions are final orders, first in *Castrejon-Garcia v. INS*, 60 F.3d 1359 (9th Cir. 1995) ("*Castrejon*"), where we interpreted § 1252's predecessor, 8 U.S.C. § 1105a (1995), and second in *Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007) (en banc), where we interpreted § 1252 in light of 8 U.S.C. § 1101(a)(47), a post-*Castrejon* amendment that both defines an order of removal and specifies when the order becomes final. We must now decide whether the Supreme Court's decision in *Dada v. Mukasey*, 554 U.S. 1 (2008), or the promulgation of a new voluntary departure regulation that became effective on January 20, 2009 deprives us of jurisdiction in this case. Because neither *Dada* nor the new regulation undermines our jurisdictional holdings in *Castrejon* and *Lolong*, we hold that we have jurisdiction over Pinto's petition for review.[1]

I

We begin our jurisdictional journey with an account of the procedural posture of this case and of the law that forms the background for the question before us.

A

In 2003, the Department of Homeland Security ("DHS") charged Pinto, a native and citizen of Guatemala, with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled. Before the IJ, the Petitioner conceded removability but sought asylum, withholding of removal, and protection under CAT. Specifically, Pinto asserted he was persecuted by Guatemalan guerillas on account of his refusal to join their ranks and their suspicions that he was providing information to the Guatemalan army. Although the IJ granted asylum, the

---

[1]Exercising our jurisdiction, we deny the petition for review on the merits in a memorandum disposition filed concurrently with this opinion.

BIA vacated the IJ's decision and denied asylum, withholding of removal, and CAT protection, concluding that Pinto failed to demonstrate persecution on account of a protected ground. Citing *Molina-Camacho v. Ashcroft*, 393 F.3d 937 (9th Cir. 2004), for the proposition that it lacked the authority to enter an order of removal when it reversed an IJ's grant of discretionary relief from removal, the BIA then remanded the case to the IJ for the limited purpose of considering whether Petitioner qualified for voluntary departure, and, implicitly, for entry of a final order of removal. In 2006, Pinto timely appealed the BIA's decision to this court while voluntary departure proceedings were still pending before the IJ.

B

**[1]** At the time Pinto petitioned for review, this court had jurisdiction under 8 U.S.C. § 1252(a)(1) to review "final order[s] of removal." However, whether we would have concluded that the BIA's decision was a final order of removal was unclear because of possible tension between two of our decisions: *Castrejon* and *Molina-Camacho*. In *Castrejon*, the IJ granted the petitioner suspension from deportation, but the BIA reversed the IJ's grant of discretionary relief and "remanded to the [IJ] for a determination of voluntary departure in lieu of deportation." 60 F.3d at 1361 (paraphrasing the BIA). Interpreting § 1252(a)'s predecessor, 8 U.S.C. § 1105a, which granted us jurisdiction over "final orders of deportation,"[2] we held that a BIA decision denying relief from deportation but remanding the case for voluntary departure proceedings was a final order of deportation. *Castrejon*, 60 F.3d at 1361. We distinguished a previous decision that held "that an appeal from a decision of the Board was a nullity when the petitioner had moved the Board to reconsider its order" because "plainly, an order that was open for reconsideration by the Board was not final." *Id.* By contrast, in *Castrejon* the BIA's

---

[2]As we have previously explained, the terms "order of deportation" and "order of removal" are interchangeable. *See Lolong*, 484 F.3d at 1177 n.2.

decision was a final order of deportation because "there was nothing pending before the Board," *id.* at 1362, and the IJ could not reconsider the Board's order of deportation upon remand, *see id.* at 1361-62. The BIA's decision was thus *effectively* final since the BIA had already adjudicated petitioner's deportability; the only lingering question on remand was how petitioner would be deported. *See Go v. Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011) (explaining that in Castrejon "the removal decision was final [because] the immigration tribunals had definitively resolved that petitioner . . . would be required to leave the United States"). We held that, under such circumstances, the petitioner "properly appealed the [BIA's] final order." *Id.* at 1362.

In *Molina-Camacho*, we considered a related question: whether we had jurisdiction to review a BIA decision that both reversed an IJ's grant of cancellation of removal and ordered the petitioner removed to Mexico. 393 F.3d at 939. We held that we did not because the BIA's decision was not a final order of removal. *Id.* at 941-42. We first rejected the government's argument that the IJ's removability finding, made before the IJ granted cancellation of removal, was a final order of removal and that the BIA affirmed this finding when it reversed the IJ's grant of cancellation of removal because we found "no statutory authority . . . that supports the assertion that a finding that a petitioner is removable is the same thing as an order of removal." *Id.* at 941. Then, relying on our previous holding in *Noriega-Lopez v. Ashcroft*, 335 F.3d 874 (9th Cir. 2003), we explained that since only the IJ has the statutory authority to issue an order of removal, "[t]he BIA's *ultra vires* act of issuing the order of removal render[ed] that portion of the proceedings a 'legal nullity.' " *Molina-Camacho*, 393 F.3d at 941. Accordingly, we held that "[b]ecause the BIA chose not to remand to the IJ for the issuance of the order, no final order of removal exist[ed] . . . that would provide jurisdiction . . . under § 1252." *Id.* at 942. Thus, under *Molina-Camacho*, a BIA decision that reversed an IJ's grant of discretionary relief was not an appealable final

order even though that decision definitively adjudicated petitioner's removability.

**[2]** Three years later we went en banc to overrule *Molina-Camacho* because it "adopted an overly narrow interpretation of the BIA's authority and did not properly construe the effect of the BIA's reversal of the IJ's decision to [grant discretionary relief] after having found the alien removable." *Lolong*, 484 F.3d at 1178. Starting from the premise that an IJ's grant of asylum "necessarily requires the IJ to have already determined that the alien is deportable," we concluded that "this determination by the IJ constitutes an 'order of deportation' " under the Immigration and Naturalization Act. *Id.* at 1177. Congress defined an "order of deportation" as either an order of the IJ "*ordering* deportation" or one merely "*concluding* that the alien is deportable." 8 U.S.C. § 1101(a)(47)(A) (emphasis added).[3] Thus, we concluded that "where the BIA reverses an IJ's grant of relief that, by definition, follows an initial determination by the IJ that the alien is in fact removable . . . the BIA simply reinstates the order of removal that has already been entered by the IJ." *Lolong*, 484 F.3d at 1177. We then held, consistent with *Castrejon*, that a BIA decision reversing an IJ's grant of discretionary relief and definitively adjudicating petitioner's removability is a final order of removal under 8 U.S.C. § 1252(a). *See id.* at 1178; *see also* 8 U.S.C. § 1101(a)(47)(B)(i) (stating that an order of deportation becomes final upon "a determination by the [BIA] affirming [the IJ's order concluding that the alien is deportable]").

---

[3]At the time we decided *Castrejon*, the term "order of deportation" was not defined. The Antiterrorism and Effective Death Penalty Act of 1996 "added for the first time a definition of 'order of deportation' " in 8 U.S.C. § 1101(a)(47) and also specified when this order becomes final. *Noriega-Lopez*, 335 F.3d at 882.

## C

**[3]** Our precedent unambiguously dictates that Pinto petitioned for review from a final order of removal. The IJ's decision was both an order granting asylum and an order of removal because before granting asylum, the IJ specifically "conclud[ed] that the alien [was] deportable." 8 U.S.C. § 1101(a)(47)(A). This order of removal then became final when the BIA reinstated it by "eliminating the impediment to [its] enforcement" (i.e., the IJ's grant of discretionary relief from removal), *Lolong*, 484 F.3d at 1177, and thereby affirmed it, *see* 8 U.S.C. § 1101(a)(47)(B). The BIA's remand to the IJ does not affect the finality of the order of removal because the IJ's only role on remand is to consider Pinto's eligibility for voluntary departure, and that decision is not reviewable because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") explicitly deprives us of jurisdiction to review an agency's denial of voluntary departure. *See* 8 U.S.C. § 1229c(f). Accordingly, the BIA's decision denying asylum, withholding of removal, and CAT protection but remanding to the IJ for voluntary departure proceedings is a final order of removal under *Castrejon* and *Lolong* and, effectively, the only order that we can review.

However, the government argues that two post-*Lolong* developments in the law of voluntary departure may have affected our jurisdiction over Pinto's petition: (1) the Supreme Court's decision in *Dada*; and (2) the Attorney General's promulgation of a new voluntary departure regulation that took effect on January 20, 2009.

### 1

In *Dada*, the Supreme Court decided "whether an alien who has requested and been granted voluntary departure from the United States . . . must adhere to that election and depart within the time prescribed, even if doing so causes the alien

to forgo a ruling on a pending, unresolved motion to reopen the removal proceedings." 554 U.S. at 4. Resolving this question required the Court to harmonize two statutory provisions of IIRIRA, one dealing with motions to reopen removal proceedings (8 U.S.C. § 1229a(c)(7)) and the other dealing with voluntary departure (8 U.S.C. § 1229c(b)(2)). Although IIRIRA provided an alien with a statutory right to file one motion to reopen (§ 1229a(c)(7)), a different provision of the Act required the alien to depart within a period prescribed by immigration officials, not greater than 60 days, if voluntary departure was granted (§ 1229c(b)(2)). *Dada*, 554 U.S. at 4-5. If the alien failed to depart within the prescribed departure period, the alien was statutorily ineligible for certain forms of relief, including adjustment of status; indeed, his motion to reopen could be denied on this basis. *See* 8 U.S.C. § 1229c(d)(1). But if the alien did depart during the 60-day period, then, "[p]ursuant to regulation . . . departure ha[d] the effect of withdrawing the motion to reopen." *Dada*, 554 U.S. at 5.

The Court observed that, given this conflicting statutory scheme, "the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis," *id.* at 18, because he has "two poor choices," *id.* at 5. If the alien leaves the United States within the prescribed voluntary departure period, he avoids statutory penalties that could prevent the BIA from reaching the merits of his motion to reopen but, pursuant to regulation, he abandons his motion to reopen. Alternatively, if the alien remains in the United States to pursue his motion to reopen and, by doing so, overstays the voluntary departure period, he risks incurring ineligibility for adjustment of status, the underlying relief sought in the motion to reopen. *Id.* at 18. To resolve this Catch-22, the Court held that the petitioner must be allowed to withdraw his request for voluntary departure before expiration of the prescribed departure period without suffering the statutory penalties otherwise associated with a failure to depart. *Id.* at 20-22.

In other words, the Court allowed the alien to forgo voluntary departure in exchange for ensuring that the BIA reaches the merits of his motion to reopen.

Before fashioning this remedy, the Court rejected an interpretation of IIRIRA that would have automatically tolled the voluntary departure period during the pendency of the motion to reopen. The Court described voluntary departure as a quid pro quo arrangement between DHS and the alien, "an agreed-upon exchange of benefits, much like a settlement agreement," and explained that "[i]n return for anticipated benefits, including the possibility of readmission, an alien who requests voluntary departure" must both arrange for departure and promptly depart. *Id.* at 19. The Court then explained why it rejected the proposed tolling interpretation: "If the alien is permitted to stay in the United States past the departure date to wait out the adjudication of the motion to reopen, he or she cannot then demand the full benefits of voluntary departure; for the benefit to the Government—a prompt and costless departure—would be lost." *Id.* at 19-20. According to DHS, this part of the Court's opinion affects our jurisdiction in the present case.

2

Additionally, DHS suggests that a new voluntary departure regulation affects our jurisdiction over Pinto's petition. The regulation limits the ability of an alien to seek judicial review of an order of removal after a grant of voluntary departure. Specifically, it provides, in relevant part, that "[u]pon granting . . . voluntary departure . . . the immigration judge shall also enter an alternate order of removal." 8 C.F.R. § 1240.26(d). Then, if "the alien files a petition for review . . . or any other judicial challenge to the administratively final order, any grant of voluntary departure shall terminate automatically upon the filing of the petition or other judicial challenge and the alternate order of removal . . . shall immediately take effect . . . ." *Id.* § 1240.26(i). Consistent with *Dada*, this

new regulation thus "reinforces the nature of voluntary depar-
ture as an 'agreed-upon exchange of benefits,' and stresses the
*choice* an alien must make between the benefits of voluntary
departure, with its concomitant obligation to depart promptly,
on one hand, or pursuing litigation without agreeing to depart
promptly, on the other." *Sandie v. Attorney Gen.*, 562 F.3d
246, 255 n.5 (3d Cir. 2009); *see also Dada*, 554 U.S. at 20
(discussing the new voluntary departure regulation while it
was just a proposal).

## II

With the above background in mind, we now turn to the
jurisdictional question before us. The government concedes
we have jurisdiction over Pinto's petition to the extent our law
of the circuit—*Lolong*—remains good law, but argues that
"the promulgation of [the] new voluntary departure regulation
which took effect on January 20, 2009, and *Dada* . . . call into
question the continuing validity of [*Lolong*]."[4] Specifically,
DHS claims that postponing voluntary departure while an
alien pursues judicial review permits what *Dada* and the new
regulation will not bear: conferring upon the alien the dual
benefits of judicial review and voluntary departure, while
depriving the government of the benefit of a prompt and cost-
less departure. Accordingly, DHS urges us to "revisit
[*Lolong*] in view of the recent developments in the law gov-
erning voluntary departure relief and [to] dismiss this petition
for review . . . for lack of jurisdiction." Neither development
sufficiently undermines our precedent to free us from the law
of the circuit.

---

[4]The government's supplemental brief on jurisdiction discusses only
*Castrejon* and does not mention *Lolong*. Because *Lolong* succeeds *Castre-
jon* and because *Lolong* interprets a "final order of removal" in light of the
post-*Castrejon* definition of an "order of deportation" in 8 U.S.C.
§ 1101(a)(47), we construe the government's argument to overrule Castre-
jon as an argument to overrule *Lolong*.

As a three-judge panel, our ability to overrule existing circuit precedent—a fortiori, an en banc decision—is limited. We may do so "without taking the case en banc when an intervening Supreme Court decision undermines [that] precedent . . . and both cases are closely on point," *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002) (internal citation omitted), or, stated more broadly, when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Neither the new voluntary departure regulation nor *Dada* undermines our previous jurisdictional holding in *Lolong*. Accordingly, we have jurisdiction over Pinto's petition for review.

A

**[4]** Contrary to the government's argument, *Dada* does not undermine *Lolong* because *Dada* and *Lolong* are substantively inapposite. As we explained earlier, *Dada* addressed a situation in which the petitioner filed a motion to reopen *after* receiving a grant of voluntary departure. In the process, the Court rejected a reading of IIRIRA—a reading our circuit had adopted in *Barroso v. Gonzales*, 429 F.3d 1195 (9th Cir. 2005), and *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005) —that would have automatically tolled the voluntary departure period during the pendency of the motion to reopen. The Court rejected this reading because "it would reconfigure the voluntary departure scheme in a manner inconsistent with the statutory design." *Dada*, 554 U.S. at 5. The Court emphasized IIRIRA "contains no ambiguity" regarding the requirement to depart within the voluntary departure period, *id.* at 15, and explained that "[i]f the alien is permitted to stay in the United States *past the departure date* to wait out the adjudication of the motion to reopen, he or she cannot then demand the full benefits of voluntary departure [because] the benefit to the Government—a prompt and costless departure—would be lost," *id.* at 19-20 (emphasis added).

By contrast, neither *Lolong* nor this case evokes similar concerns. Although Lolong petitioned for review after the BIA granted him voluntary departure, nothing in our decision enables aliens to remain "in the United States past the [voluntary] departure date to wait out the adjudication of [judicial proceedings]." *Dada*, 554 U.S. at 19-20. Rather, *Lolong* holds that a BIA decision in which the BIA reverses an IJ's grant of asylum and then grants voluntary departure is a final order of removal. As we have explained, this jurisdictional holding derives from our interpretation of 8 U.S.C. § 1252(a)(1) and 8 U.S.C. § 1101(a)(47), two statutory provisions that *Dada* merely cites but does not otherwise discuss. *Dada*'s holding on the right to file a motion to reopen without penalty cannot excuse us from adhering to the plain meaning of the Immigration and Naturalization Act. If anything, *Dada* suggests we must preserve a meaningful right to judicial review.

**[5]** Nevertheless, there is an undeniable tension between an alien's need to petition for review within 30 days of the final order of removal, *see* 8 U.S.C. § 1252(b)(1), and *Dada*'s quid-pro-quo understanding of voluntary departure. On the one hand, if an alien waits for a decision on voluntary departure, he will almost certainly lose his ability to petition for review on the merits of his case (and, if voluntary departure is denied, he cannot appeal that denial). On the other hand, if an alien petitions for review and simultaneously requests voluntary departure, he has already imposed on the government part of the burden—litigation costs—that voluntary departure is intended to avoid. Despite that tension, *Lolong* does not permit an alien "to stay in the United States past the departure date to wait out the adjudication," so *Dada* does not compel us to abandon our jurisdictional analysis. 554 U.S. at 19-20. It is within the power of the immigration authorities to reconcile the statutory definition of "final order of removal" with the administration of voluntary departure. For example, immigration judges could grant voluntary departure in the alternative when granting relief from removal, or the BIA could

remand for a *new* order of removal when remanding for consideration of voluntary departure.

B

Similarly, the new voluntary departure regulation does not deprive us of jurisdiction in the present case because a regulation cannot amend the clear and unambiguous statutory definition of a final order, nor does the voluntary departure regulation attempt to do so. Moreover, the new regulation is not directly applicable to Pinto's petition because it was not in force when Pinto petitioned for review and does not speak to petitions for review filed *before* a grant of voluntary departure. Thus, the government is arguing that the new voluntary departure regulation implicitly overrides the plain meaning of 8 U.S.C. § 1101(a)(47)(B), which is simply impossible. We briefly address each of these concerns in turn.

**[6]** First, we have previously held that 8 U.S.C. § 1101(a)(47)(B) states in "clear and unambiguous [terms]" that "removal orders become final only in the[ ] two circumstances [it specifies], so there is no need to resort to [regulations] for clarification." *Ocampo v. Holder*, 629 F.3d 923, 927 (9th Cir. 2010). Because "a regulation may not serve to amend a statute, nor add to the statute something which is not there," reading the new voluntary departure regulation to deprive us of jurisdiction in cases where the BIA has affirmed an order of removal entered by the IJ "would violate this precept by effectively amending 8 U.S.C. § 1101(a)(47)(B) to [remove a] circumstance when removal orders become final that is [ ] expressed in the statute." *Id.* (citation and alteration omitted). Moreover, the voluntary departure regulation does not even purport to affect our jurisdiction.[5]

---

[5]If anything, the regulation adopts a pro-judicial review stance: it extinguishes the grant of voluntary departure upon the filing of a petition for review, but leaves the petition for review properly before the appellate court. *See* 8 C.F.R. § 1240.26(i) ("If, prior to departing the United States,

**[7]** Second, the new voluntary departure regulation does not even apply to Pinto. The regulation became effective on January 20, 2009, and the Department of Justice expressly declined to give it retroactive effect. *See Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review*, 73 Fed. Reg. 76,927, 76,936 (Dec. 18, 2008) (codified at 8 C.F.R. § 1240.26) (stating that "the Department will not apply this rule retroactively" and that "the provisions of this rule are prospective only"); *Nevarez Nevarez v. Holder*, 572 F.3d 605, 610 (9th Cir. 2009) (stating that the new 8 C.F.R. § 1240.26 "applies prospectively only"). Because Pinto filed his petition for review in 2006, whatever effect a regulation could have on our interpretation of 8 U.S.C. § 1101(a)(47), this regulation has no effect on Pinto's petition.

Third, even if the regulation applied to Pinto, it is silent on Pinto's situation. The regulation, by its terms, addresses only those cases in which an alien files a petition for review *after* that alien has been granted voluntary departure. For example, the regulation provides that "[u]pon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the [IJ] shall also enter an alternate order of removal." 8 C.F.R. § 1240.26(d). If the alien then files a petition for review "prior to departing the United States . . . any grant of voluntary departure shall terminate automatically" and "the alternate

---

the alien files a petition for review . . . any grant of voluntary departure shall terminate automatically upon the filing of the petition . . . ."); *cf. Patel v. Attorney Gen.*, 619 F.3d 230, 234 (3d Cir. 2010) ("Under the plain language of 8 C.F.R. § 1240.26(i), we cannot stay a grant of voluntary departure after a petitioner seeks judicial review because the grant has already terminated."). Indeed, the regulation even provides that "[t]he automatic termination of a grant of voluntary departure and the effectiveness of the alternative order of removal shall not affect, in any way, the date that the order of the [IJ] or the Board became administratively final . . . ." 8 C.F.R. § 1240.26(i).

order of removal . . . shall immediately take effect." *Id.* § 1240.26(i). Where the alien files a petition for review *before* the IJ grants voluntary departure, however, the alien cannot know of "the *quid pro quo*" nature of the government's offer of voluntary departure. *Dada*, 554 U.S. at 11.

The new regulation does not address whether an alien must relinquish his pending appeal to the BIA in exchange for a subsequent stay of voluntary departure. In light of *Dada*, it seems voluntary departure could be predicated on abandonment of a pending petition for review, and the regulation provides for such conditions. *See* 8 C.F.R. § 1240.26(c)(3) ("The immigration judge may impose such conditions as he or she deems necessary."). Where a petition for review is already pending, however, any grant of voluntary departure will not *automatically* terminate unless the alien files another "petition for review . . . or . . . other judicial challenge to the administratively final order." *Id.* § 1240.26(i). Perhaps aware of this problem, DHS argues we should decline to exercise jurisdiction over Pinto's petition for prudential reasons, as the First Circuit did in *Hakim v. Holder*, 611 F.3d 73 (1st Cir. 2010).

In *Hakim*, the petitioner sought review of an April 2009 BIA decision in which the BIA reversed the IJ's grant of asylum and withholding of removal, but remanded the case to the IJ for voluntary departure proceedings. The court noted that the new regulation did "not directly address the case at hand" because "[t]he automatic termination provision of the . . . regulation assumes a chronological order, i.e., that the grant of voluntary departure *precedes* the filing of a petition for judicial review." *Hakim*, 611 F.3d at 79. The court concluded that by exercising jurisdiction over Hakim's petition filed *before* a decision on voluntary departure, it "would be permitting Hakim to circumvent the regulation by allowing him to seek both voluntary departure and judicial review, thus hindering judicial economy and denying the government the benefit of a prompt and costless departure." *Id.* (citation and internal

quotation marks omitted). To avoid this result, the court "th[ought] it wiser, for prudential reasons, to remand the case to the IJ so that she can decide whether to grant Hakim voluntary departure." *Id.*

But in doing so, the court ignored the 30-day deadline for petitioning for review of final orders, which in our circuit can begin well-before the grant of voluntary departure. The First Circuit did not explain how it could assert jurisdiction over Hakim's petition for review on the merits if he was denied voluntary departure (or decided not to accept voluntary departure if it were granted) and sought to renew judicial review. Unlike in our circuit, the First Circuit had not yet addressed whether a BIA decision denying relief from removal but remanding for voluntary departure is a final order. *Hakim*, however, prudentially declined to exercise jurisdiction even assuming that there was a final order to review. *See Hakim*, 611 F.3d at 77, 79. The regulation plainly does not require immigrants to forgo a petition for review before they have been granted voluntary departure, so we decline to follow the First Circuit and effectively force immigrants to choose between judicial review and the hope of voluntary departure. *Dada* similarly refused to make immigrants choose between accepting voluntary departure and the possibility of a motion to reopen.

**[8]** Moreover, our case is distinguishable from *Hakim* because the regulation was effective when Hakim petitioned for review and was part of the relevant law that colored the resolution of his petition. By contrast, as we discussed above, the new regulation is not applicable to Pinto's case because Pinto petitioned for review three years before the effective date of the new regulation. We thus refuse to force Pinto into a situation in which the regulation would be applicable because doing so would effectively apply the regulation retroactively despite the government's contrary assurance and because it would also effectively rewrite the regulation.

### III

The government also argues in a Rule 28(j) letter that *Fernandes v. Holder*, 619 F.3d 1069 (9th Cir. 2010), affects our analysis. For the reasons we explain, we believe it does not.

In *Fernandes*, the IJ denied petitioner's application for asylum, but the BIA "found that Fernandes had satisfied his burden of proving past persecution, which gave rise to a rebuttable presumption that Fernandes would face future persecution," and reversed the IJ's decision. 619 F.3d at 1071-72. The BIA then remanded the case to the IJ to afford "DHS an opportunity to establish that since the time the persecution occurred conditions in [Fernandes's] country have changed to such an extent that [Fernandes] no longer has a well-founded fear of being persecuted." *Id.* at 1072. On remand, the government moved to reopen the proceedings to introduce new evidence that Fernandes had filed a fraudulent asylum application. The IJ held that her jurisdiction on remand was not limited by the BIA, and denied Fernandes's asylum application on the grounds that Fernandes had knowingly filed a frivolous application in violation of 8 U.S.C. § 1158(d)(6). The BIA affirmed, and we agreed that "the IJ's jurisdiction on remand from the BIA is limited only when the BIA expressly retains jurisdiction and qualifies or limits the scope of the remand to a specific purpose." *Id.* at 1074. We added that "[a]n articulated purpose for the remand, without any express limit on scope, is not sufficient to limit the remand such that it forecloses consideration of other new claims or motions that the IJ deems appropriate." *Id.*

**[9]** Citing *Fernandes* for this latter proposition, the government argues that the BIA's failure to limit the scope of the remand in this case to Pinto's eligibility for voluntary departure "demonstrates that . . . Pinto does not have a final order of removal" because "the IJ may consider other claims or evidence . . . in remanded proceedings." We disagree for two reasons. First, the BIA's decision in this case did specifically

remand the case to the IJ "for the limited purpose of considering the respondent's voluntary departure request." Second, in *Fernandes* the BIA remanded the case to the IJ to afford the government an opportunity to rebut the presumption of future persecution through evidence of changed country conditions. Where the BIA does not definitively adjudicate an alien's eligibility for asylum, *Fernandes* correctly refused to preclude the IJ from considering other issues that may affect petitioner's eligibility for discretionary relief unless the BIA expressly conditioned in remand; after all, under these circumstances the merits of the alien's eligibility for discretionary relief remain very much in question. But we do not read *Fernandes* to allow reconsideration of the petitioner's eligibility for discretionary relief in cases like Pinto's where the BIA definitively adjudicates this issue and where the only lingering question on remand is how petitioner will leave: by removal or through voluntary departure. *Fernandes* is fully consistent with the principles we have articulated.

* * * * *

**[10]** Pinto petitioned for review of a BIA decision that denied his application for asylum, withholding of removal, and protection under CAT, but remanded the case to the IJ for voluntary departure proceedings. Our precedent compels the conclusion that the BIA's decision was a final order of removal. Because neither *Dada* nor the new voluntary departure regulation undermines our precedent, we have jurisdiction over Pinto's petition for review under 8 U.S.C. § 1252(a) and we may review the merits of his petition.